Case number 22-1577, Juana Gissendanner v. RiverSource Life Insurance Company. Arguments not to exceed 15 minutes per side. Mr. Lehman, you may proceed for the appellant. Good morning, Your Honors. Ari Lehman appearing on behalf of the appellant, Juana Gissendanner. Briefly, this is an appeal of a decision over an insurance policy. My client suffered an injury. She was a dental hygienist. She was unable to continue to work as a dental hygienist after the injury. For 22 years, the insurance company deemed her to be fully disabled, paid her full disability benefits. Nothing changed except a new analyst came in and decided that she wanted to interpret the policy differently. And we don't believe that she had that right to. There was an interpretation that was in place. There is a Sixth Circuit case law that I think is directly on point with this. I can start to get into the arguments, but I've always found the most effective thing is to answer questions that any of the judges have, if you have any to start with, is to address those, since I think I've done my best to make the arguments in my brief. But if there's any questions, we can start with that. You're referring to this Leonore case from the Sixth Circuit. Is there any difference in the policy language vis-a-vis what is totally disabled or what is partially disabled between the two different policies? Yes, so the definition of total disability is exactly the same. There is a difference in the definition of partial, or they called it residual, disability between the two policies. The district court jumped on that definition but didn't explain why that mattered. If you read the Leonore case closely, and I'm just rereading it, everything in that case was focused on the ambiguity found in the total disability policy language. And that alone, the court ruled, was sufficient to rule in favor of the insured because of the ambiguity in the definition of total disability. And that is word for word the same in both these policies. Now another very important... But the partial disability is different, right? That is correct. So the district judge here said that the provisions were unambiguous. Yes. And why is the district judge wrong? Well, first of all, the Sixth Circuit has already ruled that the definition of total disability in and of itself is ambiguous and that's all that was required to warrant a summary disposition. Quite frankly, I don't understand why... So the difference was, they said, though you perform one or more as opposed to, I believe, the languages... It was the difference between the negative and the positive. Though you perform one or though you are unable to perform one or more is the difference in the policies for the partial disability provisions. I don't understand why that makes a difference. I don't think the district court explained that. The other really important thing in this case is there was a rider that my client purchased. It does not exist in Lenore. There they just had the definition of full and partial. Here my client specifically purchased an optional coverage that was our own occupation protection. So in other words, it clearly said, if you're not working in your own occupation, even if you teach in your occupation, you're not disqualified from receiving full disability benefits if you buy this optional coverage. Okay, but here, if we get into the facts here. Yes. So she worked before the accident full time as a dental hygienist. Correct. In this particular year when the insurance company changes its approach, she's working five hours a week as a dental hygienist. She testified that was occupational therapy. There was no pay for her. But does that matter if she's doing the work of a dental hygienist during those five hours? I don't believe so because if you look at Lenore, the dentist had been doing both managing a practice and doing dental work. And then he couldn't do the practice, the dental work itself. All he could do was manage. Is that right, Lenore? Correct. But she is working. Maybe I shouldn't use the word working. She is performing the duties of a dental hygienist during the five hours, correct? But nobody else is doing the dental hygiene for those patients. Most of it, but she couldn't do all of them. She could only do it five hours a week. And she could only do it at a pace 60% of a normal hygienist. So she wasn't employable as a dental hygienist. We have testimony from her dentist saying, I wouldn't hire somebody in that condition. Is that the test when the partial disability, the insurance company is calling her partially disabled? Yes. Although you perform one or more important duties of your regular occupation, she was doing that, wasn't she? Yes, but that's in direct conflict with both the own occupation protection and the total disability. So that's why we say that there's an ambiguity and there's conflict between them. I don't argue that this definition of partial disability literally covers everybody who would ever have any kind of other job. I mean, there's something that you're going to be doing in your job. If all you have to do is one thing, you know, that relates to your job, listening to the patients and following instructions is one important occupation. I mean, this is a little extreme, but the partial disability definition covers everything. Is that a problem in insurance law, that one provision ends up being the dispositive provision? I think Michigan courts are very clear that you have to read the whole contract. I coded a clap. The Michigan Supreme Court said you can't ignore one provision of the contract in order to find that there's no ambiguity. You can't just look to one provision. You have to read the contract as a whole. If that's in conflict with the definition of total disability, you can't just ignore the definition of total disability, especially with the purpose of what they're trying to do here. As you saw in Lenore, they were looking to the purpose of the definition of total disability, and they said it's whether or not you can actually work in that profession. And we had unrebutted testimony that she wasn't employable as a dental hygienist. She couldn't perform at a normal speed. She couldn't perform all the tasks. And the person that gave her the job said, I wouldn't hire anybody like this. So you have to read the policy as a whole. That's very clear. You can't just focus in on one particular provision. I think that's what the district court did here. And then the other major error you've got is that when you purchase an optional coverage, you're expanding the coverage there. So if you just looked at the definition of partial disability and ignored the optional coverage provision, the optional coverage is getting her additional coverage. That's got to supersede something in the contract by definition. Otherwise, why pay extra for something that's already there? Or if it's not going to change anything in your coverage, why have this extra coverage? You can't sell them coverage for nothing. It's obviously meant to change what is in the policy in the absence of that provision. So to simply look at only the definition of partial disability, and as long as you do one thing, you're never going to be totally disabled. They could define it as if you work at all. And I think most modern policies do that because this type of language just makes no sense. It's just in total conflict. If you can do one single item that you used to do in your job, you're not disabled. That provides absolutely no protection. You might as well call everybody partially disabled because I don't think anybody, unless you're in a coma, everybody could do at least one of the major tasks of their previous job on 99% of your injuries. Well, you could hypothetically have somebody whose job was lifting boxes that weighed over 50 pounds, and that's the only thing they did. Obviously, today we don't have those kinds of jobs. Hypothetically, you can find times where it might not be ambiguous, but I would argue that 99% of the occupations out there have a lot of different jobs that you need to do, and just being able to do one of them, you're not going to be hireable. And it totally defeats the purpose of this, particularly when you've got your own occupation protection language. But if you can perform one or more important duties of your regular occupation, you're partially disabled, you do get benefits, right? Yes. So it's not like it's denying benefits. It's just giving, I assume, lesser benefits if you're partially disabled than if you're totally disabled. Yes, that's the purpose of the policy. I would agree with that. Okay, so the policy has dual purposes. One is if you're totally disabled, and one is if you're partially disabled. Right, and I think most current policies, I had another one where they define it as if you're unable to work at all, you get full disability. If you're able to work, you get partial disability. They could define their contracts like that fine. This one said if you can't work in your occupation, we're going to pay you full disability. This said if you're unable to do the tasks of your job, you get full disability. So, yes, you could design a policy that said if you're able to work, you get partial, and if you're not, you get full. But that's not what this said. This said you're unable to do the important duties of your job. Lenore went into a huge long explanation of why that phrase alone is ambiguous and why that language alone warranted summary judgment under very similar circumstances, both in the dental field, ironically. So... Your red light is on. I see that. Thank you. Sure. This change in your client's disability status was as a result, purportedly, of the 2019 annual review that she underwent and the information she provided as a result of that. I didn't see in the record any indication of the annual review information that your client submitted in connection with her disability status in the years leading up to 2019. So there's no way to see if her health status had not changed. The parties may agree or stipulate or whatever else, but we couldn't look at the records, the health records, to confirm that there had been no alteration in her health or disability. If the records of her disability status leading up to 2019 was no different than her health status in 2019, yet the insurance company changed their interpretation of the policy in 2019, wouldn't that be a... I'm just wondering why that wasn't put in the record, because wouldn't that be in your favor if nothing had changed as confirmed by her medical records? It was confirmed by the analyst who was the representative of the company. The analyst was the witness who came in to speak on behalf... I thought Judge Clyde was asking about primary evidentiary records that related to her status. That can't come from the analyst. Yeah, we don't want to take the insurance company's person's word for it. But they supported us. Well, I don't care. We want to see what her health, what her annual review medical records were leading into 2019. I think I included some of them in the records, because it was 20 years of them. I didn't include all of them. But that was an admission on the part of them. I believe they're legally bound by that. Then they say there was no change in status. That's an admission we don't need to... When there's an admission of something, we don't need proof to do it. It's not a disputed issue of fact. They've admitted to that fact. Okay. I understand your answer. Thank you. Christine Thompson on behalf of River Source Life Insurance Company. Good morning and thank you for your time today. We also believe that our brief fully sets forth our position. And we're here today asking the court to affirm the district court's well-reasoned, legally sound, and thorough opinion in this matter. Opposing counsel has made this into a very complicated analysis, but we disagree. We actually think it's quite simple. We're here today asking the court to enforce the contract as written and as agreed to by the parties. Our position is supported by Michigan law. Despite full briefing by the appellant in oral argument today, we've heard nothing that would support a modification of the party's contract. Your opponent says this is governed by Lenore and that Lenore is exactly the same. That's obviously not true, as pointed out by Judge Murphy. The Lenore definition of residual disability is unable to perform one or more important duties of your occupation. The policy here, the definition is, although you perform one or more important duties of your occupation, which means if you perform one to infinity of the important duties of your occupation, you are unable to perform any of the important duties of your occupation here. In Lenore, the unable to perform even one would encompass the ability to perform zero duties. So there was overlap in Lenore between the residual and total disability provisions. That just doesn't exist here. Why are we trying to figure out a reinterpretation of the contract after 20 years? Did the, I can't remember and I should, but did your opposing counsel plead equitable estoppel here in his pleadings? He is alleging estoppel. Well, okay, the insurance company interprets the policy a particular way for 20 years, and with no change in the insurance medical information or disability information, all of a sudden the insurance company reinterprets or changes its interpretation of the policy. Why aren't you equitably estopped from doing that? So there's one, there's no evidence that her, as you mentioned a moment ago, there's no evidence in the record that supports that her position never changed. Well, your opposing counsel there says that you stipulated or admitted, or some analyst or somebody from the insurance company, that her condition had not changed, and that's a stipulation on the record between the parties. At least that's what he claims. Is he incorrect in making that assertion? So, yes. Under Michigan law, in order to prove estoppel, you have to demonstrate that River Source took some action that made the policyholder appellant here believe that it would not enforce a provision under the contract. Were you paying the benefits for 20 years as something of an indication in that regard? Also, her disability status is reviewed annually. Well, I know. I know. So if River Source was never going to enforce or was not allowed to enforce any provision under the contract, they would not be annually reviewing the disability status, but only on terms acceptable to her. All of what you're saying is true, but your opposing counsel, his argument is that's not an issue in the case, because the two sides have agreed that there was no material change in her disability status, and he's saying that your client is not contesting that position. Is he misstating the record on that? So, like I said, there's no evidence in the record that demonstrates that River Source agreed either by its behavior or by its words that it would not enforce a specific provision under the policy. Well, that's not the issue. The issue is if her condition didn't change and she was made to rely upon that interpretation of the policy by the insurance company for 20 years, and now you're changing your view of the contractual relationship with no new information. I think that's really what the argument is here. So we did not change our interpretation of the contract. You would have had to if you admit that there was no change in her disability status. There is no evidence that River Source was aware that Mrs. Gissendaner was working as a dental hygienist. To the extent of her activities, in her brief she says, I always disclose the relevant work activities. She never indicates that the extent of those duties were accurately depicted to River Source. And also, under Michigan law, there's three elements to estoppel. The first is that you have to take some sort of action or say something that makes an insured believe that you're not going to invoke a provision under the policy. Every single year, her disability status was reviewed. And... She claims that you did know about what she was doing. In fact, she claims that your company asked her to do the part-time work in a dental office as a form of physical therapy. And I know the insurance company disputes that. But that's a factual dispute in the case. So the second element of equitable estoppel is reasonable reliance. Or justifiably relied. And that justifiable reliance has to be reasonable. Even if it's true that Mrs. Gissendaner was erroneously paid benefits for 20 years, that does not mean that the insurance company is equitably estopped. From enforcing its policy. And I think that there was a case from this court, the JCIVJ Industries case that dealt with a similar issue, where Johnson Controls for years paid JCI for shipping containers that it wasn't supposed to be paying for. And just because you erroneously pay for years doesn't mean that you have to erroneously pay forever. And I don't think that the appellant is reasonable to believe that she is forever entitled to total disability benefits when she's not totally disabled under the policy and knows that she's performing one or more important duties of her occupation. And how do we know that she's performing one or more duties of her occupation? Because she told us. She defined those duties. What counts as adequate performance, if you can perform a task but you can't perform it at a speed or rate that anybody would employ you, how does that count in terms of describing what equates to acceptable performance? There's no evidence in the record that she's not employable. The only evidence that appellant even points to is the testimony of a dentist who employed her for 20 years. So to say that she's not employable, you know, she was employed by this very dentist that she uses to support her testimony for 20 years. What does the record show about the dentist's testimony about the quality of her work? Could she be employed for more than five hours, for instance? I don't think that that was addressed. But the reality is he was employing her as a dental hygienist for five hours a week. In addition to that, she works as a clinical dental instructor with various educational institutions. University of Michigan, Baker College, and Wayne County Community College. And in conjunction with that employment, she has to treat patients in the clinic in conjunction with her students. So when she applied for the policy, she told us what the duties of her occupation were. She again told us when she completed the disability application, when she sought benefits. So we know from her what the important duties of her occupation are. And she testified under oath that she's performing each and every one of those duties. But for a few, which were, for example, at one point she was an assistant to a periodontist. She doesn't do that anymore. But that's because the periodontist left. But the vast majority, basically every single core duty of her occupation, she testified under oath to being able to perform. And it wasn't just her testimony. It was her statements to River Source, which resulted in her reclassification. Dr. Rosen, the dentist that employed her for 20 years, his testimony that she could perform each and every duty. I know in the papers he points to one specific duty, which I think was scaling, which he says Dr. Rosen said that she didn't perform. Well, one, Mrs. Gissendaner admitted in her deposition that she did perform it. But then immediately after he made that statement, Dr. Rosen stepped it back and said, I'm just not sure. Maybe she did it. Let me ask you this. What's the policy language in the policy that advises her that if she does any, if she's capable of doing any work whatsoever, that that would be contrary to her total disability status? The partial disability provision that says although you perform one or more important duties of your regular occupation, that definition encompasses one or more, one to infinity. If you're performing less, then you're totally disabled. Okay, but is there a definition of performance as a part of the policy in conjunction with that provision? I don't believe so, but she testified she is performing each and every one of those duties. And like I said, it's not just her testimony. It's the testimony of the dentist that she worked for. The job descriptions that she prepared and provided to RiverSource. The job descriptions from the various educational institutions that were prepared by them and appellant provided to RiverSource. So hypothetically, if a dental hygienist can perform the duties of a dental hygienist for one patient a week, but it takes them a long time to do it, would that person then be considered totally disabled or partially disabled? I can't answer that. I think it would be a case-by-case basis. But what I can tell you here is that she's performing one or more important duties of her occupation. She testified to that. So in my hypo, that would be true, too. So you would say that that person is partially disabled. I mean, it seems to me logically, if a dental hygienist can take two hours to do things that a dental hygienist normally does, but then their hands are so tired from arthritis or whatever that they can't do anything more for the week, it would seem that if they can perform dental hygiene satisfactorily but time-consumingly for one patient, that that would meet then the definition of partial disability. Am I misinterpreting? I think that you're correct, but I also don't think that that's what is here that we're presented with today. The reality is that she is working for Dr. Rosen or was working for Dr. Rosen performing each and every important duty of her occupation. She's also working at Baker College in the lab treating patients with her students. She's working at U of M treating patients with her students. She's working at Wayne County Community College treating patients with her students. My understanding for those at these universities was she would demonstrate, not that she would actually do the full cleaning or whatever is involved. So if you look at her job description with Baker College, it specifically says that she has to treat patients in conjunction with her students. And she admitted under oath that she is performing each and every duty that she identified to us as the important duties of her occupation. It happened through Dr. Rosen. It happened through her clinical instruction. She also maintains a dental license, not just because she wants to maintain it, but because she has to, because she's actually treating patients. She also has a statement on her U of M profile that indicates that she is working part-time as a dental hygienist. You know, I think that the hypothetical too, you know, if somebody asked me, can you write briefs? And I say, yes. That means I can write briefs. I might write briefs 60% slower than the average person, but I can still write briefs. And that's an important duty of my occupation. So here, even if it's true that she could only perform 60% of the time, which, you know, that's based on evidence from a dentist that was employing her. That would be sufficient to meet the definition of partial disability, because she is performing one or more important duties of her occupation. So in conclusion, we ask the court to affirm the district court's decision that the policy is unambiguous, that appellant is not totally disabled under the policy, and that RiverSource is permitted to invoke its rights under the policy. Thank you. So a couple things to address. The main one is my fellow counsel focused solely on one provision in the contract, and CLAP says we cannot do that. She totally ignored the definition of total disability. Total disability could have said you can't work at all. If you do one single item, that's not what it said. The total disability policy definition was you're not able to perform the tasks of your job. No, it says you're unable to perform the important duties of your regular occupation. Yes. What important duty could she not perform? She was unemployable. We have testimony of that that was unrefuted. She worked for five hours a week doing dental hygiene, which would show that she was disabled. She did not work. She was ordered by the company, and this testimony was non- We can't resolve that factual dispute. I mean, there's a factual dispute. She said she was doing it for occupational therapy. The folks with the company said they never told her to do that, whichever it was. I mean, she was working there, and she had, although she was not paid a regular salary, she received compensation in the form of her insurance payments and a bonus at the end of the year. I mean, all that's true, right? Wait a minute. Is what I said accurate? Basically, yes. Okay, but we are at summary judgment. We lost on summary judgment, so any disputed issue of fact has to be viewed in our favor at the summary judgment stage unless you're reversing summary judgment and granting us summary judgment. Okay, but I asked you a question, and I don't recall that you answered it. The definition of total disability, unable to perform the important duties of your regular occupation. So she works or does occupational therapy for five hours a week in Dr. Rosen's office and does the dental hygiene for the patients that she sees. How can she say she's unable to perform the important duties of her regular occupation? Is it just because she can't do it for 40 hours a week? She can't do it at a normal speed. She can't do it for 40 hours a week. She's totally unemployable in this. She needs to take frequent breaks. It's painful for her. She was doing this because she was ordered to do it. Nobody would hire her. I mean, this is a little bit beside the point, but you can't tell us she's completely unemployable. I mean, she may fit within the policy, otherwise not, but she's working in various capacities. Your language is imprecise at best. Unemployable as a dental hygienist. And she purchased a rider that said that if she's unable to work in her profession. We had no evidence that she was employable as a dental hygienist. Being employable doesn't mean you can just do the task. You need to do it with a regular speed. You need to be able to do it 40 hours a week. And we have actually unrefuted testimony. They had nobody that came and testified that we didn't tell her this. They said we don't have records. The analysts that told her to do this don't work for them and no longer were there. But we're at summary judgment, which was granted in our favor. So when we have testimony that creates an issue of disputed fact, that has to be viewed in our favor at summary judgment stage. So she was ordered to go do this so she could hopefully get back together and be able to perform as a dental hygienist. We have testimony from her dentist that let her do the occupational therapy. That A, he did this as a favor to her. And he wouldn't hire somebody in that position who had her limitations. And he gave her health insurance because he didn't think it was fair. He knew he couldn't pay her because she was doing occupational therapy. But he did that. She worked for him prior to the accident. They had a good relationship so he tried to help her out. So to say she was employable, there's certainly a disputed issue of fact as to whether she was employable as a dental hygienist. And she purchased a rider. My fellow counsel mentioned nothing about what this rider means. She says only look at the definition of partial disability. If you only look at that, why sell the rider? What did that rider mean? No, but Lenore interpreted identical language in the total disability to go to the issue of employable. So that was very clear out of this circuit had made a very clear ruling that the purpose of the total disability was whether or not you're employable. And that is in the analysis, a very thorough and interesting analysis of the total, the meaning of unable to do the duties of your occupation. And the dentist in that case managed a practice. And he did that 40% of the time and he could still manage that practice perfectly well. But the Sixth Circuit said this total disability definition is ambiguous and that's all they need to show to win.